[No. 6453.]

## County Commissioners of Montezuma County v. Frederick.

1. **Appeals—Finding on Conflicting Evidence, is** conclusive in the court of review.—(465)

2. **Elections—Publication of List of Nominations—It** seems that the county clerk should prescribe the form in which the list of nominations for an impending election shall be published. —(466)

But under the statute (Laws 1891, 146, sec. 11; 3 Mills' Stats. (Rev. Sup.), sec. 1625k;¡ Rev. Stats., sec. 2159; Laws 1894, c. 7, sec. 2; 3 Mills' Stats. (Rev. Sup.), sec. 1625r; Rev. Stats., sec. 2235) the list in some cases must necessarily be printed in double columns. In such case the printer is not to be denied compensation for the publication, by reason of the supposed non-observance of the clerk's directions to print in another form.—(467)

3. **Legal Advertisements—Measurement—Under** the statute (Laws 1901, c. 78, sec. 1; 3d Mills' Stats., sec. 1878), the measurement of a legal advertisement, whether published under a special contract, or otherwise, must be by line, and not by rule. Blank space is to be measured as if solid.—(467)

4. **County Printing—What Is—The** publication of the list of nominations is county printing; and the contract of the publisher of a newspaper for the legal printing of a county may be so framed as to include the printing of such list, in case the clerk should select such newspaper for its publication.—(468)

But inasmuch as, under the statute, the clerk is to select the newspaper in which the list is to be published, a contract in general terms to do the "County Legal Printing," at a specified rate, does not include the publication of such lists.—(468, 469)

5. **Costs—On Appeal—Where** a judgment in favor of the publisher of a newspaper and against the county, for printing, was reversed, for errors in the rule adopted in the lower court for the measurement of the printed matter, and the record did not disclose data upon which a proper judgment might be entered, each party was adjudged to pay his and its own costs upon the appeal.—(470)

*Error to Montezuma District Court* — Hon. CHARLES A. PIKE, Judge.

Mr. S. W. CARPENTER for plaintiff in error.

Mr. W. F. MOWRY for defendant in error.

CHIEF JUSTICE CAMPBELL delivered the opinion of the court:

The plaintiff, Frederick, who is the publisher of The Montezuma Journal, presented to the Board of County Commissioners of Montezuma County his claim of $110.88 for publishing in his newspaper a list of nominations for state and county officers, which the county clerk had certified to him for such purpose. The board allowed the amount of $66.36 thereon, and disallowed the remainder. From its determination, the plaintiff appealed to the district court of Montezuma County, where a trial was had resulting in a judgment for plaintiff in the full amount of his claim. The board sued out this writ of error to review it.

The finding of the district court was general, which means that all the issues were found for the plaintiff. In so far as, if at all, there is a conflict in the evidence, the finding of the district court is conclusive upon us. It appears that a copy of the list which was furnished to the plaintiff by the county clerk indicated only one column of solid matter; that is, that there were not blank spaces or separate or double columns; while the form, as it appeared in the newspaper, was two separate columns, the second one showing considerable blank space. Our reading of the record discloses that there is some dispute as to whether the county clerk, at the proper time, gave any verbal instructions to the publisher as to the form. The evidence is not very definite upon this point, there being an apparent

conflict. Certain it is, however, that the court was justified in finding that no instructions other than the appearance of the clerk's copy itself were given to the plaintiff, until after the form had been set up and published in one issue. The copy which was first furnished was concededly incomplete, as full information with regard to the list had not been received by the clerk from the secretary of state at the time the first copy was prepared. Later a second and complete copy was furnished by the clerk, and published in another issue of plaintiff's journal, the form being the same as in the first issue. After the first publication, it may be that explicit direction was given by the clerk to the plaintiff to publish the list as solid matter. The court, however, in the circumstances, was justified in finding that, in legal effect, such verbal instructions were not seasonably given so as to make them material to the present controversy. The list as printed the second time, was in two columns, the name of the office and the candidate with his residence and place of business being in the first column, and opposite the name of each candidate, and in a separate column, was the appropriate party designation. We must not be understood as holding that a publisher of a list of nominations which is required by our statute may determine for himself the form in which it shall appear in his newspaper. Indeed, we think, if that power is vested in any ministerial officer, the clerk should prescribe the form, and, if any mistake is made therein, the publisher will be protected in following the instructions of the clerk, and the latter, if anybody, will be held responsible if any mistake is made in the form. In this case, however, it is appropriate to say that section 1625k, 3 Mills' Ann. Stats. (Rev. Sup.), which constitutes the authority to the clerk for requiring such lists to be published, directs

that the publication "shall be, as far as possible, in the form in which such nominations shall appear upon the official ballots." Section 1625r, of the same volume, which pertains to the form of the printed official ballot, while it does not, in specific terms, provide for a separate column for political designations, yet we think that a fair interpretation or construction thereof so requires, since opposite the name of each candidate must be added the party name, and this, in some cases at least, might not be done without double columns. Such being true, and under the facts, we cannot say that plaintiff may not recover against the county because of an alleged disregard of the statute, or for a supposed nonobservance of the directions of the clerk. As matter of fact, the list was published in the form contemplated, or at least permitted, by the statute, and if the law is not what it should be, the general assembly is the appropriate body to change it.

A second question is as to the amount of the recovery. In measuring the space occupied by the printed list in the newspaper, the plaintiff, in his estimate, observed what is known in the printing trade as the "rule" instead of "line" measurement. Section 1878, 3 Mills' (Rev. Sup.), declares that publishers of newspapers for the publication of such advertising matter as this shall be paid at a certain rate for each line of nonpareil. It also provides that all "rule work and necessary blank space shall be paid for as if solid type." The section, however, permits the county by contract to stipulate for a less price. Whether this printing was done under contract, which is the subject of our third and later inquiry, or was made at the legal rate independent of contract, is immaterial, so far as the method of measurement is concerned. It must, in any case, be by "line," and not by "rule." Whatever necessary

blank space there is, however, must·be paid for as
if solid type.  It seems that the court adopted the
rule measurement observed by the plaintiff, and, in
this, error was committed.

A third question is as to whether the printing
was done under contract.  The county board had
made a contract with a former publisher and owner
of this newspaper, at a rate lower than the statutory
rate, and it is claimed by the county that, when plain-
tiff bought from such owner, he assumed and agreed
to carry out the obligations of his vendor's contract
with the county.  The plaintiff claims, first, that this
is not county printing; but with this we cannot agree.
It is work for which the county must pay, and is
clearly county printing; but such conclusion is not
determinative of the point here involved.  Plaintiff
further says that the contract, if he assumed its ob-
ligations at all, did not include, or apply to, these
lists, and that he did not assume the contract of his
vendor, if any, that applied to such publications.
In section 1625, already mentioned, is found the au-
thority of the county clerk for publishing lists of
nominations.  He must have the publication made in
not less than two, nor more than four newspapers,
published within his county, and one of such publica-
tions must be made in a newspaper which advocates
the principles of the political party at the last pre-
ceding state election which cast the largest number
of votes, and another such publication shall be made
in a newspaper which advocates the principles of
the political party which at such election cast the
next largest number of votes.  While the printing
of such lists is "county legal printing," yet we do
not think the evidence shows—at least the trial court
did not find—that this printing necessarily comes
within the scope of the contract which plaintiff's
vendor had with the county, even if the plaintiff as-

sumed its obligations, because it was not such a publication as, under the contract, plaintiff could demand for, or such a contract as the board would be compelled to insert in, his paper. The selection of the newspapers rested with the county clerk, who must be guided by the directions which the statute itself prescribes, and, if followed, the newspaper chosen might not include the one that held the contract for county printing, and, in any event, such publication would be in at least one newspaper that was not under contract. If the printing of this list was not within the contract, the price therefor must be at the legal rate fixed by section 1878. Of course a contract for "county legal printing" might be made so as to apply to such publications as this, if the county clerk selected therefor the newspaper whose publisher held such contract. But plaintiff testified in effect—and he must have been believed by the trial court—that, in his purchase of the newspaper, he did not intend to assume, and did not assume, the obligations, if any, of his vendor to publish these lists at the contract rate.

The record does not contain sufficient data upon which a proper judgment may be entered by us. The judgment must be reversed for a new trial by the district court. The computation of the amount to which plaintiff is entitled must be based upon the list as printed in the form in which it appeared in his newspaper, to be estimated by the line, instead of by the rule, measurement, with just allowance for necessary blank space to be reckoned as solid type, and at the legal rate prescribed by section 1878, unless, at the second trial, further evidence establishes that plaintiff assumed a contract that required him to do such work at the contract, and lower, price. The judgment is reversed, and the cause remanded for a new trial in accordance with the views ex-

pressed in this opinion. Each party to pay his, or its, own costs of the appeal.

*Reversed and remanded.*

Mr. JUSTICE WHITE and Mr. JUSTICE BAILEY concur.